I will call the next case on our calendar the United States of America versus Tony Jefferson Browne Mr. Jupiter He was sitting here long enough. I figured you'd have all that in order. I thought there was one more case before I was going to present. I just need to find one more. May it please the court, my name is Omedara Jupiter. I am the attorney for the appellant, Tony Jefferson Browne, and I'm going to ask for three minutes before we vote. Okay, that request will be granted. Your Honor, the district court abused its discretion in allowing the government to admit prejudicial evidence in this case consisting of Facebook chats that the government reported to be chats between defendant Tony Jefferson Browne and their four, well really five witnesses who testified against Mr. Browne. Mr. Jupiter, your challenge on appeal is only as to the authenticity of these records. You are not raising on appeal arguments as to hearsay or admissibility, correct? That's correct, Your Honor. And as to authenticity, we've said that that burden is very slight. Given the evidence here that ties your client to the actual Facebook chats, why isn't the slight burden easily met? Well, Your Honor, I would disagree distinctly with the assertion that these chats tied my client to the records. You agree that we can take account of circumstantial evidence and information in the content of the records themselves in looking at authenticity? I think the problem with doing that with Facebook records that are uncommon to the general public and Facebook accounts that are established where anonymity and masquerading is allowed, that the court should take the view that there has to be some evidence in the certification process that these records were in fact authored by the people at the time. Well, isn't that a subsequent matter for the prosecution to prove that we have here, these records exist, that these words were communicated back and forth? And then, not the record keeper, but the prosecution has the responsibility of showing that the witnesses did or did not make such statements. Now, are you arguing that the prosecution failed in this second step? The second step being that the witnesses, I'm not saying that they failed in the second step. That these conversations took place with these witnesses involved? No, I am saying that they failed to show that. I don't think that that goes so much to the authentication as much as the authentication. Okay, so we have Facebook chats that occur in cyberspace. So these words are being thrown in cyberspace. Okay, but the question is whether or not they were Brown's words. It's true. Okay, and the question is was there evidence to link Brown to those words? And whether or not they were the government's witnesses' words as well. Because, remember, in the certification, and this is very interesting, in the certification, they used the e-mails to certify that these are the records of Mr. Brown and government witness number one, government witness number two, government witness number three, government witness number four. Yeah, but the witnesses testified that they were their own words. The witnesses did not testify that these records were their own words. The witnesses testified, as a matter of fact, only once with this even said what her e-mail account was, what her e-mail address was. And the records were certified by e-mail addresses. But, Mr. Jupiter, this is the government wasn't certifying these as Mr. Brown's records. Why isn't it right to look at this at least from a 90211 business records perspective as authenticating the fact that these communications are communications that took place over the Facebook account of Billy Button? And then it's a separate sort of second step, as Judge Roth was suggesting, relevant inquiry, where the government needs to tie the identity of this defendant to those account records of one Billy Button. Because the government had a disagreement. The first question, the first premise, was because the government throughout this trial was trying to do just that. And even in the authentication of these records, they did that. They linked continuously Billy Button, also known as Tony Brown. Even their witness who they got the records through, who had no connection with Facebook or no explanation of how these records are generated in Facebook, this witness said that these are the records not only of Billy Button, also known as Tony Brown, that is in the record, that that's what this witness testified to, this witness also testified that these are also the records of the other witnesses you heard from. When the government simply could have gone to those witnesses and said, are these your Facebook records? Okay, but under 901, is that necessary? I think it's necessary – well, they did it under 902. But I think it's necessary as an authentication method where you're talking about records that the government is purporting to be authored by specific people, particularly in this case all of their witnesses as well as the defendant's own witness himself. But I think that the problem you have here is that the certification relates to, number one, Billy.Button1 at Facebook.com. There's no evidence in this case that this is the person who was being referred to all trial. Now, that's in government's exhibit number one. Number two, because they say, well, you know, we talked to Billy – we talked to Tony Jefferson Brown. We asked him what was his account, what was his name. He said Billy Button. He didn't say Billy Button1. But furthermore, we asked him what his email is, and he said it was tbrown at 463 or something like that. So there's no relationship to the certification by 902.11 as which they used and what the court used to defend this. And there's no identification, no connection between the certification of what Facebook did to generate these records and the records themselves. You're arguing that this should not have been authenticated under 902.11, but you're also arguing that it couldn't have been under even 901. Is that right? I don't think it could have been authenticated under any of the rules because it has no – the whole connection that the government was making and the government throughout the trial was – and even the court admonished the government in the trial. You can't say Tony Brown also defended Billy Button. Let's focus on 902.11 and the business record exception because things like account records, dates and times of transactions or communications, you agree, those are traditional kinds of business records where those things are kept with the company, right? I think that's an excellent example. So if your argument is that this is mistaken identification or this wasn't appropriately linked up to make it a business record, would you then say that bank records, bank transaction records can't be authenticated as a business record if part of the defense is that someone else was using my credit card or my debit card? I think this actually makes – this is actually a point I wanted to make. In other – the whole idea of these business records is that there's some connection to identifying whatever the record is supposed to be, particularly in instances where you're talking about a bank record. What we all know – I mean it's common knowledge. You go into the bank, you want to open an account, you get the RIP. Okay. We go to the hospital, the doctor sees you, you fill out certain forms, you're admitted, your name's on the form. The whole idea of Facebook is that you can do – you can be anonymous or you can be known. And the whole idea of this case was that both from the government's theory and the defense's theory is that there's some falsity going on. Was there testimony that Tony Brown is Billy Button? There's no testimony. There's testimony from Nicole Dalmita, I believe. The government didn't really make it clear because the government throughout the trial interchangeably used those two names. I think Nicole Dalmita was the only one who actually testified that she knew Mr. Brown as Tony Brown. As Billy Button. And she knew him as – she communicated to him as Billy Button. I think there may have been some testimony from her also that she knew Tony Brown. The other witnesses did not. And the government constantly referred when they questioned the witnesses very keenly about Billy Button and also referred to Mr. Brown throughout the trial as the defendant Billy Button. Okay. Well, then there is testimony, there is evidence that Tony Brown is Billy Button. Well, there was evidence that. Or that he has introduced himself as such. Now, isn't that up then to the jury to decide whether the Billy Button in these Facebook records is really Tony Brown? Not in the instance of a Facebook. This is basically the individual. I mean, Facebook isn't showing that. Facebook is simply showing we have these records that these communications took place on a certain date. And then the prosecution has shown that Tony Brown has presented himself as Billy Button. Well, I think that the – first of all, there is only one witness that says – that may have said that and the government didn't. You know, I don't think the government really fleshed that out in terms of, you know, how do you know – I mean, you know from the investigation in this case, you know from reading the paper or anything like that. I don't think that that was really fleshed out in the government's case. Secondly, I don't think the records themselves, where they're generated as author, recipient, and saying Billy Button, does not mean that this is Billy Button's Facebook page. Now, remember, the records themselves don't have the page. They don't have the email address. And more importantly, the email address doesn't correspond to what the evidence was. The evidence was that this was the email address. This is how we link into Billy Button. The email address given in the certification was billy.button1atfacebook.com. It was Billy Button, Billy Button X1, Billy Button 2, Billy Button 3. Similarly, there's no information with regard to how someone becomes an author. Let me ask you this, Mr. Jupiter. You're arguing about certain – you're arguing these evidentiary points. And you're saying that these Facebook documents, both of Billy Button and of the young ladies, should not have been made as part of the record. Even if we agree with you, isn't the error harmless? No, Your Honor. And why isn't it? This was a one-day trial where you had the dark men open, had their witnesses, and the defense put on its case. We have 200 pages of chats, 200 pages. I mean, this is – the chats are bigger than the transcript itself. And the jury found – interestingly, the jury found Mr. Brown not guilty on the very counts, I think, that would have been – that were reliant upon the testimony of the witnesses alone. And the counts that he found guilty of were the counts, I think, that corroborated, you know, the production of – this is what the transfer and receipt of documents. But when it came down to the testimony of the witnesses who were talking about, for instance, the enticement for the purposes of committing a sexual act, we have very descriptive testimony by these victims that apparently the jury did not find sufficient evidence to find him guilty of that kind of enticement, to find him not guilty of the aggravated rape. The very things that he found not guilty of show that he's – and, of course, the government itself crossed – what they spent most of their time cross-examining Mr. Brown on were the chats themselves. What did they talk about in the closing argument? They talked about evidence that was in these chats. And even they asked – even Mr. Potter asked Mr. Brown – I'm sorry, Your Honor, my time is up. No, go ahead. Continue. Mr. Potter asked Mr. Brown himself. So I guess all of these Facebook conversations are just a miscommunication when Mr. Brown denied that he was the author of it. And that's what the jury went back to, 200 pages of Facebook chats that were – that they came in. So, you know, they can't even think of 100, for those reasons, we ask that this court – Okay, and we'll have you back on rebuttal. And Mr. Potter? Mr. Potter, your entire appeal seems to rest on 902.11. That is the business records exception. You are not on appeal making arguments as to authentication under 901. Is that right? But the issue is, what did the court rely on in finding that the record was, in fact, what the government purports they were, which were the Facebook chats of people who were defendants of the state? Clearly, the evidence before the district court, just the name of the Facebook entry itself, which was Billy Button, the defendant admitting that he was, in fact, Billy Button, the Facebook records having all of the chats between Billy Button and the victims in this case, again, all reference to Billy Button. The standard to the court is that they gatekeep to determine whether the evidence is – But the government has established a democracy case that this evidence is what it purports to be. That in itself was more than sufficient for the court to admit those records into evidence and for those records to go to a jury. Well, help us tease this apart, because 902.11 is self-authenticating. And that means that the records, by virtue of the certification alone, are authenticated, premised on the idea that there's something inherently reliable and trustworthy about the way business records are created and maintained. It does not permit of extrinsic evidence for purposes of authentication in contrast to 901, which does. You've just listed various pieces of evidence in the record extrinsic to the documents themselves that support authenticity. That, it seems to me, is a 901 issue, but in some ways shows exactly why 902.11 is not the right mechanism for authenticity of social media records. Well, the certification from Facebook, in our view, supports that the Facebook chats are believable, were certified to be the authentic records of Facebook. But is it your position that social media, including the content of those chats, just by virtue of being certified by the third-party service provider as on its servers, thereby is admitted as a business record under Rule 803? Because doesn't the inquiry for 902.11 basically equate with admissibility, or at least the hearsay exception of 803? How could it possibly be that the content of social media records between two parties, neither of which is part of the recording of the business and is familiar with the trustworthiness of the content, that the content of that communication can come in when neither of those individuals is being called to attest to the authenticity of the content? Their actual participation in the discussion. The mere fact that Facebook says these are all records of the chats between two parties and submits an authentication document, a certificate document, saying that we attest at Facebook that these are the records of a customer being monitored. If we come into court with that certification and a document, I think that is sufficient for a court to say, well, I have reviewed the certification, I have looked at the records, the certification says these are the 10% of the Facebook for Billy Button. The records are in front of me showing Billy Button. The final argument whether or not the court can go through the entire text and determine whether or not Billy Button actually named each and every entry in that record is a question that should ask the court whether or not the government has to prove that each and every entry in that record was authored by Billy Button. Yes. And did you prove that? Yes. How did you? Through the testimony of Ava Blyden. When she arrested the defendant in this case, she asked if his name was Billy Button. He acknowledged that. So she was tied up. She communicated with Billy Button over Facebook. Billy Button went to her home. She physically saw who Billy Button was and she identified him in court. Why didn't you have the victims, why didn't you ask the victims whether they received the statements attributed to Billy Button in the chat logs? In hindsight, that question should have been asked of the victims too. Did you make these specific entries with Billy Button? They were asked whether or not they had communicated with Billy Button over Facebook. They all said that they had. And the testimony was consistent with the Facebook chats between them and Billy Button. But you judge the fact that this is, in fact, the Facebook records of Billy Button. Again, the standard is not a very high one. The documents were relevant. They went specifically to the allegations of the case. The victims in this case communicated with Billy Button. And the question is whether or not a district court, But again, those are all things, those are all pieces of evidence extrinsic to the documents themselves that you might use to authenticate documents under 901. And if you proceeded by way of 901, your next step would be to look at questions of admissibility, including hearsay exceptions, like can this be admitted because it's a party admission. The rule that I hear you asking us to espouse is that social media communications are per se business records, so that all the traditional rules of hearsay, like whether this is a party admission or how it is, that the content of these communications can come into evidence, go by the wayside, that this can be admitted, not just authenticated, but admitted as a business record. How could that, that's just so fundamental to the rules of evidence. I don't understand how we could take that route. I don't know if anyone can hear me, but I don't know that at the district court level, the complexity of the article was timely before. I think it was simply that these records, there's nothing to show that these records belong to Billy Button. As opposed to, there's nothing in the records to show that all of the entries in the chats were in fact made by Billy Button. There's a difference there. Again, if the issue is one of authentication of the record that came from Facebook, the record that the government received and did not present to the court, did the government get those records from Facebook? But that can't be the extent of the inquiry. I mean, let's take an example I assume you're familiar with, wiretap evidence. So there's no question that things like subscriber information and dates and times and the phone numbers of to and from, those things could come in as business records. They could be authenticated that way, and they could, then that would follow under 8035, they'd be in as business records. But no court as far as I know has said that the content of the conversations, those transcripts automatically come in as business records. We need to look to some other basis for admissibility and some other exception to the hearsay rules to get those communications actually into evidence. So how is this any different? I mean, I understand that the certification might get us past authenticity for the Facebook subscriber information, for the dates, the times of the communication, but how do we make what seems like a huge leap from that to the actual content of the communication? The standard that is presently used for business records, I don't know that there is an exception for Facebook records. I don't know that this court has ruled on that particular issue. I don't know that this is the case for the court to make, kind of to make a certain distinction. I think the issue before this court put it was the simple law. to whom, on what time, how long. That still does not permit you to present into evidence the content of any of those telephone calls. And I think in that respect it's a similar situation. I don't know. Not as a business record, not from the telephone company. But let me ask you another question. What about harmless error? Get presented into evidence. And that evidence was overwhelming misdemeanors, embalming, coercion of the females into producing the images of child pornography. And those images were produced using the cell phones. And based on the evidence produced, evidence at a trial, whether that be Facebook entries or copy of images, had little or nothing to do with the other overwhelming evidence. Well, Mr. Jupiter, Mr. Jupiter disagrees with that. And points out about the acquittals. Points out, one, there were acquittals on the rape charge and the three kinds of coercion and enticement. And secondly, he points out that a one-day trial may have been trumped by the heavy volume of actual Facebook conversations. So that if, in fact, there was an evidentiary error here, the volume of those conversations may not have been harmless. But we don't know if that was a decision to appoint on the three coercive charges. There were, in fact, over four coercive charges. And he was convicted on one of the coercive charges. Why they did not convict on the other three? I do not know the answer to that. I was there with the government. We used official evidence. We went through that. I think they were understaffed. And we take it as yes. But, for example, Mr. Jupiter's perspective is the reasoning behind the acquittal of those three charges. I don't know that he could have done anything to support that. To my knowledge, he did support that. The jury convicted him because there were people around him. The exactity of the charges, the production of child pornography, the images that were produced had nothing to do with Facebook. It had nothing to do with communication between the defendant and the victims primarily by cell phone. And that evidence would have allowed him to do the thing that he did. Take my time, sir. Okay. He stated that he found what was correct in admitting the evidence. It was specifically tied to this defendant. But he said that in one of the texts, one of the Facebook entries, he showed the picture of the defendant. So there was clearly a tying up in the case of the defendant's case. The decision of the trial court is so different. Okay. Mr. Jupiter, on rebuttal. Thank you, Your Honor. First of all, with respect to Congress' error, the issue of there's an important element that the government had to prove. That is the statute of counts 5, 6, 7, I believe, and 8 that talk about enticement. They also had to prove the enticement. In this case, it was a Dutch count that the jury did find Mr. Brown guilty of. I think the difference is the fact that these particular records had a lot of chat showing, allowing the government to prove, to corroborate this issue of coercion. Because, remember, in this case, it was not Mr. Brown who was guilty. The government's theory was that he was. And that was the only thing they had to prove. And I think those records were substantial in meeting that element because I don't think the jury was satisfied with the element of coercion with respect to the counts that included Mr. Brown. Mr. Jupiter, I'd like to ask you about the scope of the error that ultimately we need to evaluate for harmlessness. That is, we can affirm on any ground, even if we thought there was error in authenticating these as business records, they still could be authenticated under 901. We've talked in our colloquy today about much of the evidence. And your colleague has pointed out that extrinsic to the records themselves ties Mr. Brown to Billy Button. And let's assume for these purposes that that would support authentication under 901. For four of these five chats, they would come in as a hearsay exception to party admission. So doesn't this all boil down to really one error? And that is the single chat that's between Nicole Delmeda and Delicia Brooks, where it's not apparent what hearsay exception would bring that into evidence. No, because I think the witnesses also, even though they're coming to chat, they're offering communications as well. So their communications are also being organized. Those are certainly not part of the formal communications. But more importantly, I think it's going to be inherently unfair for the defense not to have had the opportunity to depart against 901 at that time. The reason, I think, you know, as the government points out, it was not argued. The reason it wasn't argued was because the government and the court were divided on 902.11. So I think it would be unfair at this point for the defense to have failed to have an opportunity to argue this under 901. And that was not the purpose at all before. And I don't even think it fits under 901. It wasn't the purpose at all. What remedy are you seeking? All right. Thank you, Mr. Jupiter. We thank both counsel for their helpful arguments and their briefs in this matter. And we'll take the matter under advisement.